(August 3, 1922.)

J. F. FALK, Respondent, v. HUMBIRD LUMBER COM-
PANY, Appellant.

J. F. FALK, Respondent, v. DALKENA LUMBER COM-
PANY, Appellant.

[208 Pac. 404.]

NAVIGABLE STREAM—USE FOR FLOATING LOGS—REASONABLE CARE—IN-
JURY TO BANKS AND ABUTTING LAND—MEASURE OF DAMAGES—IN-
CREASE IN HAZARD FROM RIVER—DEPRECIATION IN MARKET VALUE
—SEPARATE ACTS OF DIFFERENT PARTIES—SEGREGATION OF DAM-
AGES—CONTRACT PERMITTING USE OF RIVER AND LAND—CONSTRUC-
TION OF.

1. One using a navigable stream for the. purpose of floating
logs must exercise reasonable care to prevent injury to the banks
and abutting land.

2. If through failure to use such care the banks and abutting
land are injured, he is liable for the resulting damage.

3. If through his failure to use due care the banks and abut-
ting land are so injured that an adjoining tract of land is sub-
jected to a permanent and increased hazard from the action of
the river, resulting in a depreciation in its market value, the
proper measure of damages is the amount of such depreciation.

4. An agreement between one using a navigable river for float-
ing logs and an adjoining land owner, by which the former is
granted the right to land timber products, and use the river, im-
ports due care, and is not a release of a cause of action for negli-
gence.

Publisher's Note.

1. Liability for injuries to riparian owners by running logs in
stream, see notes in 10 Ann. Cas. 235; Ann. Cas. 1918A, 732; 41
L. R. A. 494; 64 L. R. A. 977; 35 L. R. A., N. S., 824.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County.   Hon. John M. Flynn, Judge.

Actions for damages to real estate.   Judgments for plaintiff.   *Affirmed.*

E. W. Wheelan, for Appellants.

Exhibit 1 offered in evidence by the defendant, Humbird Lumber Company, is a bar to damages. (*Hord v. Holston River R. Co.,* 122 Tenn. 399, 135 Am. St. 878, 19 Ann. Cas. 331, 333, 123 S. W. 637.)

The court erred in admitting evidence as to damage to crops in 1917, 1918 and 1919. (*Larimer & Weld Irr. Co. v. Landers,* 26 Colo. App. 1, 141 Pac. 517.)

The court erred in allowing plaintiff to recover prospective or future damages. (8 Am. & Eng. Ency. of Law, 678; 8 R. C. L. 542; *City of Richmond v. Gentry,* 136 Ky. 319, 136 Am. St. 255, 124 S. W. 337; *Uline v. New York Cent. etc. R. Co.,* 79 N. Y. 175, 53 Am. Rep. 123, note.)

James F. Ailshie, for Respondent.

This action has been instituted and tried on the authority of *Mashburn v. St. Joe Improvement Co.,* 19 Ida. 30, 113 Pac. 92, 35 L. R. A., N. S., 824; *Idaho Northern R. Co. v. Post Falls etc. Co.,* 20 Ida. 695, 119 Pac. 1098, 38 L. R. A., N. S., 114; *McGuire v. Post Falls Lumber & M. Co.,* 23 Ida. 608, 131 Pac. 654.

Where the acts of the tort-feasor have been completed damages may be recovered for all injury resulting therefrom—past, present and future. (*Boise Valley Construction Co. v. Kroeger,* 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968.)

Measure of damages allowed, announced and commented on in *Boise Valley Construction Co. v. Kroeger, supra; Young v. Extension Ditch Co.,* 13 Ida. 174, 89 Pac. 296.

Joint and concurrent tort-feasors may be sued jointly or severally. (*Economy Light & Power Co. v. Hiller,* 203 Ill.

518, 68 N. E. 72.; *Foley v. Lord,* 232 Mass. 368, 122 N. E. 393.)

Instructions given are the law as announced in *Idaho Northern R. R. Co. v. Post Falls etc. Co., supra; McGuire v. Post Falls Lumber & M. Co., supra; La Veine v. Stack-Gibbs Lbr. Co.,* 17 Ida. 51, 134 Am. St. 253, 104 Pac. 666.

McCARTHY, J.—These are actions for damages to real estate, in which respondent claims that appellant companies made such use of Priest River in floating their. logs that they damaged his land. For convenience the case against the Humbird Lumber Co. will hereafter be called the Humbird case, and the one against the Dalkena Lumber Co. the Dalkena case. Each complaint contains two causes of action. In the first cause of action in the Humbird case respondent alleges that he is the owner of the land in question; that Priest River is a navigable stream and flows through said land; that prior to the acts of appellant complained of the banks of said river were in firm, solid and substantial condition, covered with a dense growth of vegetation, vines, sod, brush and trees, and protected by windfalls, brush and other debris, which had permanently lodged against them, all of which protected and prevented the banks from being washed away by the current; that during the spring and early summer of each of the years of 1917, 1918 and 1919, appellant Humbird Lumber Co. used said river for floating, and driving large quantities of its logs, rafts, booms and timbers down said stream through respondent's land; that said appellant negligently blasted out windfalls, debris, roots and trees which protected the banks, thereby leaving them unprotected and open to erosion, abrasion, and destruction by the current and floating debris; that at said times appellant negligently drove its logs, rafts, booms and other timber down said river through repondent's land, and negligently allowed them to violently come in contact with the banks of said river and abrase and cut down said banks, thereby destroying and removing the vegetation, vines, sod and brush protecting said banks from

erosion and from the current of the river; that said banks are thereby left barren, unprotected and open to the elements and the current; that on account of said acts about three acres of respondent's land were eroded and washed away, and about thirty acres are exposed, and will be washed, eroded, flooded, and injured by said stream and the overflow thereof. In the first cause of action respondent asks for $2,500 damages. In the second cause of action he alleges that in 1915 he furnished timber and logs, and caused to be built certain wings in Priest River at points adjoining his land; that appellant negligently allowed its logs and timber, while being driven down said river, to violently come in contact with said wings, tearing them out, and causing them to float away; that the value of the logs and timber in said wings was $250 and respondent asks to recover that amount from said appellant. The complaint against appellant Dalkena Lumber Co. also contains two causes of action and is identical with that against the Humbird company except that it does not allege the negligent use of powder. Each of the appellants filed a demurrer to each of the causes of action, which were overruled. Appellants then answered admitting the ownership of the land by plaintiff, that Priest River flows through it, that the river is navigable for the floating of logs and timber, and that during 1917, 1918 and 1919 they drove large quantities of their logs, booms and timbers down said stream through plaintiff's land. They deny all other allegations of the complaint. In addition the Humbird Lumber Co., as an affirmative defense, sets up a contract between respondent and itself. On the trial it was stipulated that the two causes should be tried and submitted to the jury together and that the jury should return separate verdicts, finding for or against respondent as to the Humbird Co. and for or against him as to the Dalkena Co., and that, if the jury found for the respondent, it should assess his damages as against the Humbird Co. in such amount as it should pay, and against the Dalkena Co. in such amount as it should

pay. The jury returned a verdict for respondent in the Humbird case in the sum of $1,525 on the first cause of action, and $100 on the second cause of action, and in the Dalkena case for $775 on the first cause of action and $100 on the second. Each of the defendants made a motion for a new trial. From the orders denying said motions these appeals are taken. The errors assigned in the notice of the motions for new trial, and in the brief, are identical, and we will consider such of them as we deem necessary for the disposition of these appeals, taking them up in the order which we deem logical for the purposes of this opinion. Both appellants assign as error the insufficiency of the evidence to justify the verdict, in the following particulars:

"The evidence does not tend to establish any damage except in the loss of less than two (2) acres of land by the plaintiff, and no evidence was introduced on the trial of said action as to the value of the portion of plaintiff's land alleged to have been taken or damaged.

"The evidence introduced does not show or purport to show the damage done to plaintiff's land, if any, by this defendant, or its representatives or employees, or the property of this defendant or if any damage was done plaintiff's land by this defendant the evidence does not disclose the proportion of the entire damage by this defendant or by others owning and driving sawlogs down said river through plaintiff's land."

Appellant Humbird Lumber Co. assigns the following as error:

"The total number of logs driven by this defendant down Priest River through plaintiff's land in the three years involved in this action, was 17,500,000 feet, while the number of logs driven by the Dalkena Lumber Company in the same period, as disclosed by the evidence, was in excess of 38,000,000 feet, and the damage assessed against this defendant on the same evidence, the two cases being tried together, was practically twice as great as that assessed against the Dalkena Lumber Company with no proof what-

ever before the jury as to the damage done, if any, by the logs of each defendant."

"The contract, Exhibit One (1), offered in evidence constituted a complete justification and release of this defendant from all claims of the plaintiff by reason of driving logs down Priest River through plaintiff's land."

Appellant Dalkena Lumber Co. assigns as error:

"There was no evidence introduced from which the jury could determine or apportion the amount of damage done to plaintiff's land, if any, by each defendant and the verdict of the jury is based entirely upon speculation.

"The evidence does not establish that any damage resulted to the plaintiff's land by reason of any negligence on the part of this defendant, the evidence only establishing that the defendant drove logs down the river in the three (3) years in controversy and that during that time the banks of plaintiff's land were eroded."

Both appellants assign as errors of law the following:

"The court erred in permitting plaintiff to offer evidence on the theory that plaintiff's action was brought to recover for future damage, and allowing the plaintiff to offer evidence on the theory that plaintiff's land would be damaged in the future or subjected to future damage by reason of the condition in which plaintiff's land was alleged to be after the drive of 1919. No such injury had been sustained or damage caused at the time of trial, and such damage is entirely speculative and fanciful."

This court has said: "One who undertakes to utilize a stream for the floating of logs, lumber or other material must do so having due and proper regard for the interests and property rights of others along such stream, and must exercise care proportionate to the natural conditions of the stream, the dangers and difficulties of the undertaking and the liability of inflicting injury upon others." (*Idaho etc. R. R. Co. v. Post Falls etc. Co.*, 20 Ida. 695, 119 Pac. 1098, 38 L. R. A., N. S., 114.)

"One who engages in floating logs and lumber down a stream must exercise reasonable care in order to avoid in-

jury to the property of others. The fact that the stream is navigable does not give one the right to dump logs and timber into the stream and allow the same to go unattended and without being cared for, and form jams and dams in the stream and divert the current of the stream on to the property of other persons, and thereby injure and damage the same." (*McGuire v. Post Falls Lumber etc. Co.,* 23 Ida. 608, 131 Pac. 654. See, also, *Mashburn v. St. Joe Improvement Co.,* 19 Ida. 30, 113 Pac. 92, 35 L. R. A., N. S., 824; *La Veine v. Stack-Gibbs Lmbr. Co.,* 17 Ida. 51, 134 Am. St. 253, 104 Pac. 666.)

"Where the acts of the tort-feasor have been completed and consummated, and the causes from which the injury must necessarily flow are patent and obvious, in such case the injury is of such a permanent nature that the whole damages, past, present, and prospective, may be recovered in one action, and that one recovery only should be allowed." (*Boise Valley Const. Co. v. Kroeger,* 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968.)

"If the land is permanently injured, but not totally destroyed, the owner will be entitled to recover the difference between the actual cash value of the land at a time immediately preceding the consummation of the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of the trial." (*Young v. Extension Ditch Co.,* 13 Ida. 174, 89 Pac. 296.)

The law of this state in regard to the right to float logs down a stream, and the limitations on such right, in accordance with the authorities above cited, was correctly given to the jury by the court in an instruction as follows: "In determining the question as to whether or not the defendants were, or either of them was guilty of negligence in the use of said stream, you will ascertain and determine from all the evidence in the case as to whether or not they, or either of them, used the stream for the floating of their logs and timber products in such reasonable manner as a reasonably

prudent man would act, having due regard for the property rights of those owning the lands along and abutting on the stream. And I further instruct you that the person or corporation must exercise reasonable care in order to avoid injury to the property of others. The fact that a stream is navigable does not give anyone a right to dump logs and timber into the stream and allow the same to go unattended and without being cared for and as a consequence to form jams in the stream and divert the current on the stream over the lands of the abutting property owner, or to break down or destroy the banks of the stream.''

While there is a conflict, there is evidence tending to show that the logs of the appellants were piled in the river at such times, in such quantities, and in such manner, as to constitute a lack of reasonable care, and so as to injure the banks and adjoining land when they started down the river. The evidence tends to show that something like two acres of plaintiff's land adjoining the banks was washed away. Appellants contend that the measure of damages should be the reasonable market value of the land so washed away. The court instructed the jury that the measure of damages was the difference, if any, between the market value of respondent's land after the completion of the drive in 1919, and what its reasonable market value would have been at that time, if the injuries to the land and banks had not occurred. Respondent claims the evidence tends to show that the destruction of the banks, and the vegetation upon them, left his land more exposed to the action of the river, and more likely to be overflowed and damaged, than before, that this constituted a permanent and lasting damage to his land as a whole, resulting in a depreciation of the market value of the whole tract. There is substantial evidence tending to show these things. This being so, we conclude that the case falls within the doctrine of *Boise Valley Const. Co. v. Kroeger* and *Young v. Extension Ditch Co., supra,* and that the measure of damages submitted by the court to the jury was correct. Respondent's evidence tends to show that, even if another log is never floated down the

river, his land is exposed to a hazard from the action of the river, caused by the destruction of the banks and vegetation, which did not exist before. This increased hazard has resulted in a present and permanent depreciation of the value of respondent's land, for which he is entitled to recover.

Appellant Dalkena Lumber Co. claims that there is no evidence tending to show any negligence on its part. The evidence tends to show that the logs of both appellants filled the river to an unreasonable height and degree, resulting in the destruction of the banks and vegetation, and that the logs of the Dalkena Lumber Co. were to some extent intermingled with those of the Humbird Lumber Co.

Both appellants contend that there is not sufficient evidence to enable the jury to intelligently estimate the amount of damage caused by each of them. In *Smith v. Highland Livestock & Land Co.,* 34 Ida. 321, 200 Pac. 679, this court held: "In an action for trespass, brought by the owner of grazing lands against the owner of a band of sheep that were trailed across such lands on the same day and immediately following another band, where there is no evidence tending to show the amount of damage committed by the trespass of either band, and no facts are shown from which a jury may apportion the damages, the judgment will be reversed for want of sufficient evidence to sustain the same."

In that case, however, there were no circumstances shown which would enable the jury to estimate how much of the damage was caused by each of the offending parties. In the present case the evidence shows the number of logs floated down the river by each of appellants, the time and method of floating them, and that the first logs which went down were largely those of the Humbird Co., with a few of the Dalkena company's intermingled. The bulk of the Dalkena company's logs followed. We think this evidence was definite enough to enable the jury to estimate how much of the damage was done by each of appellants.

Appellant Humbird Lumber Co. contends that the judgment should be set aside because, while the evidence shows that it floated 17,500,000 feet of logs down the river in the three years in question, and the Dalkena Lumber Co. floated 38,200,000 feet, yet the jury, on the first cause of action, made the damages to be paid by the Humbird Co. almost twice as much as those to be paid by the Dalkena Co. The number of logs is a circumstance entitled to weight, but the evidence shows that the first logs to go down were largely those of the Humbird Co. The jury may have concluded that the first logs to go down, after the jam was loosened, did more damage than those which went down later. It is not an unreasonable inference from the evidence and is sufficient to account for the difference in the damages.

Appellant Humbird Lumber Co. contends that respondent's cause of action was barred as against it by a contract between them, by which respondent gave appellant the right to construct and use logging roads and camp buildings upon his land, to land timber products, and to use the river adjoining the land, the consideration being that respondent should become the owner of the the camp buildings upon the completion of the logging operations. Appellant contends that this agreement gave it a right to make such use of the river as it desired, and constitutes a complete defense to an action for negligence. We do not so construe it. Appellant did not need respondent's consent or agreement to a reasonable use of the river for floating logs, it being conceded that it was navigable. (See *Idaho Northern R. R. Co. v. Post Falls Lumber Co.,* and other Idaho cases, *supra.*) The provision of the agreement granting such a right was therefore surplusage. We do not think that the language used supports the contention that respondent intended to release appellant from any cause of action he might have for a negligent use of the river. The agreement that appellant might land timber products also imports the use of due care.

We conclude that other assignments of error, not specifically mentioned in this opinion, do not constitute ground for reversing the judgments.

The judgments are affirmed, with costs to respondent.

Rice, C. J., and Dunn, J., concur.